Filed 7/29/24  P. v. Gilmete CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MORIS MATAUTO GILMETE,<br><br>Defendant and Appellant. | F085116<br><br>(Super. Ct. No. BF178390A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

Jin H. Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellant and defendant Moris Matauto Gilmete of two counts of first degree murder, recklessly evading police, and concealing a firearm within his vehicle, a misdemeanor. The jury also found true all special allegations, including one multiple-murder special-circumstances allegation (Pen. Code, § 190.2, subd. (a)(3))[1] per murder count. The trial court sentenced defendant to two consecutive indeterminate terms of life without the possibility of parole, each with an additional 25-year-to-life enhancement for use of a firearm (§ 12022.53, subd. (d)), plus a determinate term of 16 years.

On appeal, the parties agree that defendant's conviction for concealing a firearm is not supported by substantial evidence and that the jury was legally precluded from finding "multiple" multiple-murder special-circumstances allegations true. Defendant also contends that defense counsel rendered ineffective assistance of counsel by not requesting dismissal of all but one enhancement under section 1385, subdivision (c). We reverse defendant's conviction for concealing a firearm and vacate all but one multiple-murder special-circumstance finding. As modified, we affirm.

## PROCEDURAL BACKGROUND

On August 26, 2022, the Kern County District Attorney filed an amended information alleging that defendant committed two counts of first degree murder in killing Louisa Abraham and Carlos Abraham (§§ 187, subd. (a), 189; counts 1–2), reckless evasion of police (Veh. Code, § 2800.2; count 3), and misdemeanor concealing a firearm in a vehicle. (§ 25400, subd. (a)(1); count 4).

The amended information further alleged, as to counts 1 and 2, that defendant discharged a firearm resulting in death (§ 12022.53, subd. (d)) and the special circumstance that defendant committed more than one count of murder (§ 190.2,

---

[1] All further undesignated statutory references are to the Penal Code unless otherwise stated.

2.

subd. (a)(3)). As to counts 1 through 3, the information also alleged defendant had suffered a prior "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), which also qualified as a serious felony conviction (§ 667, subd. (a)). It alleged various aggravating circumstances as to counts 1 through 3, including that defendant had prior convictions that were numerous or of increasing seriousness. (Cal. Rules of Court, rule 4.421(a)(2), (b)(1), (b)(2).)

On September 9, 2022, a jury found defendant guilty on all counts and found all special allegations true. The jury did not make a finding as to the alleged aggravating circumstances. However, the trial court determined that defendant's prior convictions were of increasing seriousness, that the crime involved great violence, great bodily injury, "a high degree of cruelty, viciousness, or callousness within the meaning of [the] California Rules of Court," use of a firearm, and was conduct indicating that defendant was a serious danger to society.

The court sentenced defendant to an aggregate term of 16 years, plus two terms of life without the possibility of parole, plus 50 years to life as follows: on each of counts 1 and 2, life without the possibility of parole, plus a five-year serious felony conviction enhancement (§ 667, subd. (a)(1)), plus a 25-year-to-life firearm enhancement (§ 12022.53, subd. (d)); on count 3, six years (the upper term of three years, doubled due to the prior strike conviction); and on count 4, one year, stayed pursuant to section 654.[2] The trial court ordered sentences on counts 1 through 3 to be served consecutively. The trial court explained that although it found six aggravating circumstances true, it imposed the upper term based "solely [on] … defendant's prior record of conviction."

On October 11, 2022, defendant filed a notice of appeal.

---

[2] The abstract of judgment does not reflect the sentence on this count. However, given we reverse the conviction on count 4, we need not order the abstract of judgment amended.

# FACTUAL BACKGROUND

On the night of September 23, 2019, defendant, his wife, Louisa, his wife's brother, Carlos, and his friend, J.J. celebrated J.J.'s birthday in the apartment complex where defendant lived with his wife and children.[3] Defendant became either a "little bit tipsy" or "drunk," and Louisa and Carlos were both a "little bit tipsy."

At some point, Louisa's phone called emergency services. On the call recording, an unidentified man and woman were speaking or arguing in a foreign language. A woman then exclaimed, in English, "You are scaring me with the f[**]king gun." Screams could then be heard.

According to J.J., defendant "started acting out," firing his gun. Defendant shot Louisa twice, once on the left side of her neck and once on her head, from approximately six to 18 inches away. When Carlos neared Louisa, defendant shot Carlos twice: once on his "upper left lateral back" and again around his left armpit. Louisa and Carlos died from their wounds. Defendant turned his firearm on J.J., who heard a " 'fop' " or clicking sound, as though defendant pulled the trigger, but it did not fire. Believing the weapon empty, J.J. ran and hid.

About three minutes after the shooting, G.F, a neighbor at the apartment complex who knew defendant, Louisa, and Carlos, investigated after hearing gunshots. Finding Louisa lying on the ground, he tried to stop the bleeding from her neck but did not see Carlos immediately. He heard a voice saying, "[H]ello, hello" from a phone near Louisa and, realizing it was an emergency services dispatcher, spoke with her to get assistance.

Police responded to the scene. An officer noticed defendant's vehicle leaving the complex and saw it run a red light. Officers pursued defendant at high speed onto a highway until he exited on an offramp where construction crews were working and

---

[3] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

collided with the back of a construction crew truck. Officers found defendant unconscious in the vehicle, with the airbag deployed and a revolver containing six spent casings on the front passenger floorboard.

During his police interview, defendant admitted he was drunk at the time of the shooting. He could not remember with whom he argued, only that he put his gun to " 'Quany's' head," but he was just "messing around." Once defendant fired his first shot, he believed his "next mission … [was] to make sure I shoot, shot everybody over there" because "I already, the gun went off and the same consequences to me." Defendant looked for more ammunition because "at that time I was thinking about to go and kill the rest of my, my enemies that … [t]hat there's people that used to f[**]k with me at that time. That's the only thing in my mind. Is to go and take care of them." Defendant claimed he believed he was shooting his neighbors, who, he claimed, did not like him, but he claimed he did not realize he shot Louisa and Carlos. After the shooting, he believed he may have pulled his gun and fired it, but he did not remember at whom he fired. He believed he ran to his apartment to do something related to "bullets." The next thing he knew, he woke up in the hospital.

## DISCUSSION

### I.    Ineffective Assistance of Counsel

Defendant argues that counsel provided ineffective assistance by failing to request dismissal of all but one enhancement under section 1385, subdivision (c). We disagree.

#### A.    *Legal Standard*

A defendant has the burden of proving ineffective assistance of counsel. (*People v. Pope* (1979) 23 Cal.3d 412, 425, overruled on other grounds in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.) The defendant must show (1) his counsel's performance fell below an objective standard of reasonableness and (2) prejudice, that is, but for counsel's unprofessional error a different result would have been reasonably

probable.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687−688, 694 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216−218.)

Generally, ineffective assistance of counsel claims should be brought through habeas corpus proceedings, instead of direct appeal, given that "the record usually sheds no light on counsel's reasons for action or inaction."  (*People v. Woodruff* (2018) 5 Cal.5th 697, 736.)  On direct appeal, a court may find ineffective assistance only if: (1) the record shows that counsel lacked a rational tactical purpose for the challenged act or omission, (2) counsel failed to provide a reason when asked for one, or (3) no satisfactory explanation could exist.  (*People v. Campos* (2024) 98 Cal.App.5th 1281, 1298.)

In determining whether counsel's conduct was deficient, a reviewing court also "defers to counsel's reasonable tactical decisions" and presumes that "counsel acted within the wide range of reasonable professional assistance."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)  A court uses an objective standard of reasonableness under prevailing norms based upon facts, not speculation, that counsel rendered ineffective assistance.  (*Strickland*, *supra*, 466 U.S. at pp. 687–688, 693–694; *People v. Williams* (1988) 44 Cal.3d 883, 933 ["[a] factual basis, not speculation, must be established before reversal of a judgment may be had on grounds of ineffective assistance of counsel"].)

" 'Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  [Citation.]  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ' " (*In re Valdez* (2010) 49 Cal.4th 715, 729−730.)

Even if a court finds ineffective assistance, a court will not act unless prejudice exists:  a reasonable probability that defendant would have obtained a better result absent the deficiency.  (*Strickland*, *supra*, 466 U.S. at pp. 687–688, 693–694; *People v. Avena* (1996) 13 Cal.4th 394, 418.)  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.)

### B.    *Analysis*

Our Supreme Court has yet to rule on an interpretive split over section 1385, subdivision (c).  (See *People v. Walker* (2022) 86 Cal.App.5th 386, review granted Mar. 22, 2023 (S278309) (*Walker*); *People v. Ortiz* (2023) 87 Cal.App.5th 1087, review granted Apr. 12, 2023 (S278894) (*Ortiz*); *People v. Anderson* (2023) 88 Cal.App.5th 233, 238–240, review granted Apr. 19, 2023, (S278786).)

That dispute concerns whether, under section 1385, subdivision (c),[4] the broader language of "in the furtherance of justice" (*Ortiz*, *supra*, 87 Cal.App.5th at pp. 1093–1099, review granted) or the narrower language of "would endanger public safety" (*Walker*, *supra*, 86 Cal.App.5th at pp. 396–398, review granted) governs the trial court's discretion to dismiss an enhancement.  Both *Walker* and *Ortiz* agree that section 1385,

---

[4] Section 1385, subdivision (c) in relevant part provides:  "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of the enhancement is prohibited by any initiative statute.  [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

subdivision (c)(2)(B),[5] the mitigating factor at issue here, does not mandate dismissal of all but one enhancement, but differ as to the applicable standard for the court's discretion, described above. (*Walker*, at pp. 396–398; *Ortiz*, at pp. 1093–1099.)

The parties similarly divide. Defendant urges us to apply *Walker*, the People, *Ortiz*. Applying either *Walker* or *Ortiz*, there is no reasonable probability that the court would have dismissed the enhancements. Under *Walker*'s more restrictive standard, a trial court may refuse to dismiss an enhancement only if there exists " 'a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' " (*Walker*, *supra*, 86 Cal.App.5th at p. 395, review granted.)

Defendant argues that, here, the trial court would have no choice but to dismiss all but one enhancement under this standard given defendant would serve the remainder of his life in prison, thus posing no danger to the public. But there remains a "remote but real possibility" that either sentence may be commuted or overturned. (*People v. Garnica* (1994) 29 Cal.App.4th 1558, 1563 [considering the same as applied to multiple life-without-parole sentences for multiple murders].) There is no crime more depraved or more injurious than intentional first degree murder. (See *People v. Contreras* (2018) 4 Cal.5th 349, 382 [nonhomicide crimes cannot be compared to murder " ' "in terms of moral depravity of the injury to the person and to the public" … in their "severity and irrevocability" ' "]; *People v. Garnica*, at p. 1563 ["[e]*ach* of the murders is deemed the more heinous because it is one of *multiple* killings"].) Therefore, if defendant were to be released, he would pose a risk to public safety given his especially heinous, violent behavior – murdering his wife and brother for no apparent reason – demonstrates a strong propensity for causing life-threatening violence.

---

[5] Section 1385, subdivision (c)(2)(B) says, "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed."

The trial court could easily conclude that, even if the likelihood of defendant's release is small, defendant still posed a risk to public safety warranting imposition of the enhancements. Put differently, the court could reasonably conclude that risking defendant's release would likely endanger the public given the exceedingly high likelihood that defendant would harm others if released.

Consequently, counsel could have reasonably concluded that it was futile to request dismissal, even under the *Walker* interpretation. (*People v. Thompson* (2010) 49 Cal.4th 79, 122 [futility not a basis for ineffectiveness].) Thus, the omission was not only rational but lacked prejudice. There is no reasonable likelihood the trial court would have dismissed defendant's enhancements under *Walker*'s interpretation of section 1385, subdivision (c).

Even if counsel did not apply the *Walker* interpretation, counsel was not ineffective. Generally, a failure to anticipate changes in the law is not considered ineffective assistance of counsel. (*People v. Harris* (2013) 57 Cal.4th 804, 840; *People v. Pearson* (2013) 56 Cal.4th 393, 461–462; *Alcorn* v. *Smith* (6th Cir. 1986) 781 F.2d 58, 62 ["nonegregious errors such as failure to perceive or anticipate a change in the law … generally cannot be considered ineffective assistance of counsel"].) This principle instructs us.

*Walker* was issued December 15, 2022, over two months post sentencing, and *Ortiz* was published on January 26, 2023. Our Supreme Court has yet to clarify the issue. Given we "evaluate the conduct from counsel's perspective at the time" (*Strickland*, *supra*, 466 U.S. at p. 689), we cannot say that counsel would be deficient for reading section 1385, subdivision (c) in any reasonable manner, even if it disagreed with *Walker*, for no court had yet provided any clarifying interpretation.

We cannot conclude that counsel's omitted request was so unreasonable as to constitute ineffective assistance of counsel.

9.

## II. Concealed Firearm Conviction

We agree with defendant and the People that there was not substantial evidence supporting defendant's concealment of the revolver in his vehicle.

A complete firearm visible on a vehicle's seat is not "concealed" under section 25400. (See 38 Ops.Cal.Atty.Gen. 199, 200 (1961); *People v. Hale* (1974) 43 Cal.App.3d 353, 355–356 [partial concealment of an essential component of a visible weapon is sufficient]; CALCRIM No. 2521 [firearm must be "substantially concealed"].) The prosecution theorized defendant's revolver was on the seat next to defendant and flew to the floorboard when defendant crashed his vehicle, where officers found it. No evidence suggests the firearm was occluded, e.g., stowed under the passenger seat. Given the evidence showed the firearm rested on the seat in plain view prior to the crash, it was not "substantially concealed." We reverse defendant's conviction on count 4.[6]

When a conviction is reversed or the sentence on a count is vacated, the typical remedy is to remand for resentencing so that the trial court may restructure its sentencing choices to compensate for the lost count. (*People v. Francis* (2017) 16 Cal.App.5th 876, 887.) However, where "the trial court imposed the maximum possible sentence" and "there are no sentencing choices to restructure, it is appropriate for us to modify the sentence on appeal." (*Ibid*.)

Here, the trial court imposed the maximum possible sentence. Count 4's reversal, just like its stay under section 654, impacts neither the court's decision to impose the aggravated term on count 3 nor the indeterminate terms for counts 1 and 2. Having sentenced defendant to the statutorily required indeterminate term and the maximum

---

[6] Though the trial court sentenced defendant on count 4 to one year concurrent with the punishment on count 3 and stayed the sentence on count 4 under section 654, the abstract of judgment does not reflect a conviction on count 4. Given we reverse the sentence on count 4, we need not order the abstract amended to reflect any change.

possible determinate term available in this case, the court could not restructure the sentence further.

### III.  Multiple-murder Special-Circumstances Findings

We agree with defendant and the People that defendant's dual multiple-murder special-circumstances allegations and findings as to count 1 and count 2 are improper. Only one multiple-murder allegation may be alleged and found true in a single proceeding.  (*People v. McWhorter* (2009) 47 Cal.4th 318, 377; *People v. Bonin* (1988) 46 Cal.3d 659, 691, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800.) However, this impropriety has no effect on defendant's sentence.  (*People v. Garnica*, *supra*, 29 Cal.App.4th at p. 1563 [single multiple-murder special-circumstance finding applies to each murder committed].)  We therefore vacate all but one of the multiple-murder special-circumstance findings, but this does not affect defendant's sentence.

### DISPOSITION

We reverse defendant's conviction on count 4.  We vacate all but one multiple-murder special-circumstance finding.  As modified, we affirm the judgment.  The trial court shall prepare and forward to all appropriate parties a certified copy of an amended abstract of judgment.


POOCHIGIAN, J.

WE CONCUR:


HILL, P. J.


FRANSON, J.


11.